O

JS - 6

cc: order, docket sheet,
remand letter to Los Angeles
Superior Court, No. BC 402046

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MYRTHA GONZALEZ, | ) | Case No. CV 12-08696 DDP (FMOx) |
| | ) | |
| Plaintiff, | ) | Order Granting Plaintiff's Motion |
| | ) | to Remand |
| v. | ) | |
| | ) | [Dkt. No. 7 ] |
| J.S. PALUCH COMPANY, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Plaintiff Myrtha Gonzalez ("Plaintiff") has sued defendants J.S. Paluch Company Inc. ("Paluch") and Rachael Casavant ("Casavant") for various state law claims relating to her employment at and termination from Paluch. (See generally Compl. Docket No. 1.)  Paluch removed from state court, claiming this Court had jurisdiction under 28 U.S.C. § 1332 ("section 1332"). (Notice of Removal, Docket No. 7-2.)  Presently before the Court is Plaintiff's Motion to Remand ("Motion").  (Docket No. 7.)  Relevant to this Motion is Plaintiff's harassment claim against Casavant, a California citizen.  Paluch claims remand is improper, because Plaintiff has not served Casavant, and because Plaintiff

fraudulently joined Casavant.  The Court disagrees.  Because Plaintiff's claim against Casavant prevents exercising jurisdiction under section 1332, Plaintiff's Motion, is granted.

**I. Background**

In August 2008 Plaintiff, a California resident, began working for Paluch, an Illinois corporation with its principal place of business in that state.  (Compl. ¶¶ 1:1-2, 2:1.)[1]  Casavant is a citizen and resident of California, whom Paluch employed "in a managerial and supervisory capacity."  (Id. ¶ 1:4.)  Beginning in February 2009, Plaintiff served as an Outside Sales Representative for Paluch, and Casavant was one of her supervisors.  (Id. ¶ 2:1-2.)  One of Casavant's responsibilities was assigning Outside Sales Representatives to sales territories .  (Id. ¶ 2:3.)  Paluch rates the quality of each territory in California, according to their size, affluence, and other factors.  (Id.)  Plaintiff became pregnant, and on August 4, 2011, informed Casavant that she would be taking time off beginning on September 10, 2011, as she was expected to give birth on or about October 5th.  (Id. ¶ 2:5.)  Casavant, then, began giving Plaintiff the "cold shoulder," and on several occasions "completely ignored" Plaintiff "when she came into the office."  (Id. ¶ 2:6.)  Before Plaintiff began her pregnancy leave, she had twenty sales territories.  (Id. ¶ 2:14.)

---

[1] The Complaint does not order its paragraphs sequentially.  Instead, it starts and restarts the numbering at various points- numbering first begins in the section titled "General Allegations", it begins a second time with the section titled "Common Allegations," and starts over a third time with the section titled "Prayer for Relief."  The cite "(Compl. ¶¶ 1:1-2, 2:1)" refers to the first through second paragraphs in the first numbering set, the one beginning with "General Allegations," and to the first paragraph of the second set, the one beginning with "Common Allegations."  All other cites to the Complaint follow this scheme.

2

On or around January 5, 2012, Plaintiff spoke with the human resources department at Paluch, and was told to return to work on January 13, 2012. (Id. ¶ 2:9.) On about January 10, 2012, Plaintiff tried to speak with Casavant about which sales territories she would be assigned once she returned, but Casavant said she was unaware Plaintiff was returning, and told Plaintiff to contact human resources. (Id. ¶ 2:10.) When Plaintiff told Casavant she had already spoken with human resources, Casavant again insisted that Plaintiff contact that department. (Id.) The next day Plaintiff went to Paluch's office to meet with Casavant, but she was denied entry. (Id. ¶ 2:11.) She was forced to communicate through an intercom, and the individual she spoke with said sales associates were not currently allowed in the building, and that Casavant would contact her later. (Id.)

Casavant did not contact Plaintiff, and when Plaintiff returned to work on January 13, another Paluch employee gave Plaintiff the name of one client that she was allowed to contact. (Id. ¶ 2:12.) About two weeks later Casavant had still not spoken with Plaintiff, so Plaintiff reached out to the person "responsible for communicating with the outside sales staff about which territories Casavant had assigned them." (Id. ¶ 2:13.) This individual informed Plaintiff that Casavant assigned her to two territories, which were ranked low in contrast to the highly ranked territories Plaintiff had before taking pregnancy leave. (Id. ¶¶ 2:13, 15) Plaintiff then attempted to contact Casavant "multiple times by telephone and email to find out why" she was assigned to eighteen fewer territories than she previously had, but Casavant never responded. (Id. ¶ 2:14.)

Because of the number and quality of Plaintiff's territories, she made fewer sales than before her pregnancy leave. (Id. ¶ 2:16.) Being paid on commission, her income dropped. (Id.) On April 10, 2012 Plaintiff contacted Casavant about being unable "to make sales," because of her "confined" territory assignments. (Id. ¶ 2:18.) Casavant told Plaintiff that, "if she failed to turn in advertisement contracts or contact the office for a period of 10 consecutive working days, she was considered to have voluntarily resigned and her employment would be terminated." (Id.) On May 2, 2012, Plaintiff emailed Casavant and an individual in Paluch's human resources department, alleging that "she was being discriminated against because of her pregnancy." (Id. ¶ 2:19.) The same day, Plaintiff received a letter from Paluch, dated two days earlier, stating that "she had voluntarily resigned because she had not submitted advertisement agreements for a period of 10 consecutive days." (Id.) No Paluch employee responded to Plaintiff's email. (Id.)

## II. Legal Standard: Removal Under Diversity Jurisdiction Generally

A defendant who seeks to remove a case from state to federal court has the burden of establishing federal subject matter jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Courts also "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Removal is governed by substantive and procedural requirements. Pursuant to 28 U.S.C. § 1441("section 1441")(a), an action brought in state court may be removed to federal court if the civil action is one "of which the district courts of the United States have original jurisdiction." Section 1332 provides that

4

district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs and is between citizens of different States."  Section 1332(a)(1).  Complete diversity of citizenship is required, meaning each of the plaintiffs must be a citizen of a different state than each of the defendants. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

**III. Analysis**

    **A. Service , Removal, and Diversity Jurisdiction**

Paluch claims that removal was appropriate under section 1441, because Casavant, the only defendant who is a California citizen, has not been served in this action.  (Paluch's Opposition to Plaintiff's Motion to Remand ("Opp'n") at 3:26-4:12.  Plaintiff states she has "actively attempt[ed]" to serve Casavant, but has been unsuccessful.  (Plaintiff's Reply to Opp'n to Motion to Remand ("Reply") at 6:3-9.)

Section 1441(b)(2) states: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly *joined and served* as defendants is a citizen of the State in which such action is brought."  Section 1441 (emphasis added). Some district courts have interpreted this language to approve removal actions that were brought before named in-state defendants were served.  See e.g. Cucci v. Edwards, 510 F. Supp. 2d 479 (C.D. Cal. 2007) (holding that removal was proper when service upon a forum defendant had begun, but was not completed, at the time of removal); Waldon v. Novartis Pharmaceuticals Corp., No. C07-01988 MJJ, 2007 WL 1747128 (N.D. Cal. June 18, 2007).

However, 1441(b)(2) does not abrogate section 1332's requirement of complete diversity. <u>Jennings-Frye v. NYK Logistics Americas Inc.</u>, No. 2:10-CV-09737-JHN-EX, 2011 WL 642653, at *4 (C.D. Cal. Feb. 11, 2011). Diversity jurisdiction under section 1332 "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." <u>Caterpillar</u>, 519 U.S. at 68. The Ninth Circuit has indicated that section 1141(b) does not expand diversity jurisdiction. <u>Clarence E. Morris, Inc. v. Vitek</u>, 412 F.2d 1174, 1176 n.1 (9th Cir. 1969). "The case law is clear that a defendant who is a citizen of plaintiff's state destroys complete diversity, regardless of whether that defendant was properly served prior to removal." <u>Jennings-Frye v. NYK Logistics Americas Inc.</u>, 2011 WL 642653, at *3. The Ninth Circuit "has specifically rejected the contention that section 1441(b) implies that service is the key factor in determining diversity." <u>Preaseau v. Prudential Ins. Co. of Am.</u>, 591 F.2d 74, 78 (9th Cir. 1979).

Accordingly, courts have found they lack jurisdiction to hear a diversity case when an in-state defendant had not been served at the time removal was brought. <u>Jennings-Frye</u>, 2011 WL 642653, at *3-4; <u>Roberson v. Fauryan</u>, No. CIV. 2:11-2999 WBS, 2012 WL 346628, at *3-4 (E.D. Cal. Jan. 31, 2012). A court lacks jurisdiction even when the in-state defendant has not been served at the time the court decides the remand issue. <u>Findley v. Am. Home Mortg. Corp.</u>, No. CIV S-10-2885 KJM, 2011 WL 2069530, at *3 (E.D. Cal. May 23, 2011); <u>see also</u> <u>Vitek</u>, 412 F.2d at 1176 ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship

6

of the parties named and not from the fact of service."). Such an outcome is justified because the out-of-state defendant can always challenge the joinder of the in-state defendant. Pullman Co. v. Jenkins, 305 U.S. 534, 541 (1939) ("[T]he non-resident defendant should not be permitted to seize an opportunity to remove the cause before service upon the resident co-defendant is effected. It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove."). Therefore, Casavant's status as a named defendant precludes diversity jurisdiction, unless she was fraudulently joined.

**B. Fraudulent Joinder**

Paluch claims that Casavant, the only in-state defendant, was fraudulently joined, and, thus, this Court should exercise diversity jurisdiction over this case. (Opp'n at 4:13-8:1.) "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "[F]raudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "[T]here is a general presumption against fraudulent joinder," but it will be found "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).

7

A defendant asserting fraudulent joinder "carries the heavy burden of establishing the absence of any possibility of recovery." Lighting Sci. Group Corp. v. Koninklijke Philips Elecs. N.V., 624 F. Supp. 2d 1174, 1179 (E.D. Cal. 2008); see also id. ("The claim of fraudulent joinder must be supported by clear and convincing evidence, with all ambiguities resolved in favor of the non-removing party."). Remand must be granted unless the defendant establishes that there is no possibility that the plaintiff could prevail on any cause of action it asserted against the non-diverse defendant. See Levine v. Allmerica Fin. Life Ins. & Annuity Co., 41 F. Supp. 2d 1077, 1078 (C.D. Cal. 1999).

Deciding whether a defendant is fraudulently joined requires a court to "walk a very fine line: it must consider the merits of a matter without assuming jurisdiction over it." Davis v. Prentiss Props. Ltd., 66 F.Supp.2d 1112, 1114 (C.D.Cal.1999). "[S]ome room must exist between the standard for dismissal under Rule 12(b)(6), for example, and a finding of fraudulent joinder." Id. at 1115. Even "where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court." Ballesteros v. American Standard Ins. Co. of Wisc., 436 F.Supp.2d 1070, 1072 (D.Ariz.2006) (quoting Albi v. Street & Smith Publ'ns., 140 F.2d 310, 312 (9th Cir.1944)). Merely a "'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of fraudulent joinder doctrine." Mirchandani v. BMO Harris Bank NA, No. CV-11-2286-PHX-GMS, 2011 WL 6019311, at *3 (D. Ariz. Dec. 5, 2011). In fact, "a federal court's

fraudulent-joinder consideration should be akin to an application of Rule 11." Davis, 66 F.Supp.2d at 1115.

Accordingly, in order to decide whether Plaintiff fraudulently joined Casavant, the Court must examine Plaintiff's claim against her, although the analysis is not as searching as would be appropriate for a Rule 12(b)(6) motion to dismiss. See Davis, 66 F.Supp.2d at 1114. Plaintiff claims that Casavant harassed her because she was pregnant, which is harassment on the basis of sex. (Plaintiff's Memorandum of Points and Authorities in Support of Motion to Remand ("Memo.") at 13:11-16:18; Compl. ¶ 2:29-37.)

California's Fair Employment and Housing Act ("FEHA") forbids "various forms of discrimination in the workplace in employment," but an individual employee or supervisor is not liable for employment discrimination, only the employer is. Reno v. Baird, 18 Cal. 4th 640, 645 (1998). FEHA also prohibits harassment on the basis of sex. Cal. Gov't Code § 12940(j)(1). "[H]arassment because of sex includes . . . harassment based on pregnancy." Id. at § 12940(j)(4)(C). An employee "is personally liable for any harassment . . . that is perpetrated by the employee actions." Id. at § 12940(j)(3); see generally 8 Witkin, Summary of California Law, Const. Law § 919 (10th ed. 2005).

Plaintiff argues that Casavant harassed her in the following six ways:

> "1) [G]iving Gonzalez the cold shoulder immediately after she disclosed her status as a pregnant employee and her need for leave, 2) refusing to communicate with Gonzalez about her return to work, 3) refusing to communicate with Gonzalez about her assigned territories, 4) failing to reassign Gonzalez to her previous high ranking territories, 5) assigning Gonzalez only a small number of low ranking territories upon her return to work, and 6) purposefully setting Gonzalez up to fail in her sales

9

goals by giving her only a small number of low ranking territories to work."

(Memo. at 14:12-20.) Since Casavant cannot be liable for discrimination, the issue is whether Plaintiff has stated a sufficient harassment claim against Casavant.

Some of Casavant's alleged harassment is discrimination (e.g. assigning Plaintiff few territories upon her return from pregnancy leave.) Discrimination includes "commonly necessary personnel management actions." Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 64-65 (1996). These include "hiring, firing, failing to promote, *adverse job assignment*, significant change in compensation or benefits, or official disciplinary action." Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009) (emphasis added). "[D]elegable authority" is a "test to distinguish conduct actionable as discrimination from conduct actionable as harassment." Id. at 706 (emphasis omitted). Thus, "the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment." Id. By contrast, "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." Id.

Nevertheless, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." Id. at 709. Discriminatory acts "can provide evidentiary support for a harassment claim by establishing discriminatory animus." Id.; see

10

also Cal. Code Regs. tit. 2, § 7287.6 (giving examples of conduct constituting harassment).

A jury could, accordingly, "infer" from Casavant's discriminatory acts (such as confining Plaintiff to two low quality sales territories) that her hostility towards Plaintiff (like refusing to communicate with Plaintiff) was "because of . . . sex," which is enough to prove harassment. See Roby, 47 Cal. 4th at 709-710 (emphasizing "shunning" and other actions as examples of hostility); Cal. Gov't Code § 12940(j)(1). Paluch contends that giving Plaintiff the cold shoulder and refusing to communicate with her is insufficient to arise to the level of harassment. (Opp'n at 7:3-33.) Paluch may be correct, as successful harassment claims generally emphasize more than shunning. See e.g. Roby, 47 Cal. 4th at 709.[2] However, this is not a 12(b)(6) motion; this is a motion to remand. A "glimmer of hope" is all Plaintiff needs. Mirchandani, 2011 WL 6019311, at *3. Because of this standard, the pervasive acts of discrimination, and the emphasis that the California Supreme Court placed on shunning in Roby, this Court finds that Plaintiff has at least a glimmer of hope. See Roby, 47 Cal. 4th at 709. Therefore, Casavant was not fraudulently joined, and remand is appropriate.

///
///
///

---

[2] Paluch also argues that the shunning in Roby is distinguishable, because the defendant in that case "publicly ostracized" the plaintiff. (Opp'n at 7:3-5.) However, Plaintiff also alleges public acts of shunning. (E.g. Compl. ¶ 2:11.) Moreover, the public character of Casavant's actions can be inferred from the occasions when she "completely ignored" Plaintiff "when [Plaintiff] came into the office." (Id. ¶ 2:6.)

11

**IV. Conclusion**

    For the reasons discussed, the Court grants Plaintiff's Motion to Remand.

    The Scheduling Conference set for January 10, 2013 is vacated.

IT IS SO ORDERED.

Dated: January 7, 2013

                              DEAN D. PREGERSON
                              United States District Judge